UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                          :

DHIP, LLC,                                  :
                                          :

                           Plaintiff,   :

              - against -         :
                                          :

FIFTH THIRD BANK,               :
                                          :

                        Defendant.  :
                                          :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  ___9/30/2021___

19-CV-2087 (VSB)

**OPINION & ORDER**

Appearances:

Joshua D. Rievman
Dunning Rievman LLP
New York, New York
*Counsel for Plaintiff*

C. Neil Gray
Samuel Kadosh
Reed Smith LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      In *Abate v. Fifth Third Bank* ("*Fifth Third I*"), No. 13-CV-9078 (VSB), 2018 WL

1569260 (S.D.N.Y. Mar. 27, 2018), I held that James Abate ("Abate") and his co-plaintiffs could

not assert various claims against Defendant Fifth Third Bank ("Defendant" or "Fifth Third")

relating to Fifth Third's having not provided a loan to the then-defunct entity Drexel Hamilton

Investment Partners, LLC ("DHIP"). *Id.* at *1. Specifically, I found "that [p]laintiffs assert

derivative claims and seek to recover individually for injuries that DHIP purportedly suffered in

the first instance," but that they had "relinquished their membership interests in DHIP," which

meant "they [could not] pursue a derivative suit on behalf of DHIP." *Id.* at *6.

In this action, it is now Plaintiff DHIP, LLC ("Plaintiff") that asserts the same four

causes of action I dismissed in *Fifth Third I*.  (Doc. 1.)  The premise of Plaintiff's case is that its

claims are no longer derivative because they are brought by the "revive[d] DHIP," which at the

time of *Fifth Third I* had been "dissolved."  (Opp. Br. 12.)[1]  Currently before me are the

competing motions for summary judgment filed by Plaintiff and Fifth Third.  (Docs. 31, 37.)

Because I find, as a matter of law and based on the undisputed facts before me, that DHIP has

not been legally revived—it is without legal existence to establish subject matter jurisdiction—

Fifth Third's motion for summary judgment is GRANTED.

I.   **Background**[2]

DHIP was a limited liability company ("LLC") formed under Pennsylvania law in

November 2010 for the purpose of providing asset management and administration services.

(Def. 56.1 ¶ 1.)[3]  DHIP contracted out certain parts of the day-to-day management of its

investment portfolio to Centre Asset Management, LLC ("Centre"), a separate company that

Abate had founded.  (*Id.* ¶¶ 5–6; Pls. 56.1 ¶¶ 5–6.)[4]  DHIP's operations were funded in large part

through loans and lines of credit obtained both from Centre and from Sanlam International

---

[1] "Opp. Br." refers to the brief Plaintiff filed in opposition to Defendant's motion for summary judgment.  (Doc. 43.)

[2] Although Plaintiff "disputes" many of the facts within Defendant's Local Rule 56.1 statement, these disputes are mostly not about the facts themselves, but rather take issue with the implications or characterizations of said facts. Additionally, Plaintiff uses his response to add in facts unrelated to those raised by Defendants.  These actions are improper under Local Rule 56.1, and I disregard Plaintiff's improper assertions.  *See LG Capital Funding, LLC v. PositiveID Corp.*, No. 17-CV-1297-NGG-SJB, 2019 WL 3437973, at *2 (E.D.N.Y. July 29, 2019) ("The Court can . . . disregard legal conclusions or unsubstantiated opinions in a Local Rule 56.1 statement.") (internal quotation marks omitted); *Crump v. Fluid Handling, LLC.*, No. 17-CV-45, 2019 WL 2145929, at *2 (W.D.N.Y. Mar. 29, 2019) ("Rather than scrutinize a Rule 56.1 statement line by line, a court may simply disregard any improper assertions or inadmissible evidence.").

[3] "Def. 56.1" refers to Defendant Fifth Third Bank's Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment.  (Doc. 39.)

[4] "Pls. 56.1" refers to Plaintiff DHIP LLC's Response to Defendant Fifth Third Bank's Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment.  (Doc. 45.)

Investments USA Holdings, Inc., and/or its parent company, Sanlam Limited (collectively, "Sanlam"), the latter of which is a publicly traded South African company.  (Def. 56.1 ¶¶ 7, 13–15.)[5]  Around October 2012, Sanlam notified DHIP it did not intend to continue to fund it, and around June of 2013, as the deadline to pay back Sanlam loomed, DHIP defaulted on its loans from Centre.  (*Id.* ¶¶ 15–18.)  DHIP also had "significant" outstanding debt with many vendors and service providers.  (*Id.* ¶ 17.)

In an attempt to fund itself, DHIP sought a line of credit from Defendant.  (*Id.* ¶ 18.)  The parties dispute the exact course of their dealings with regard to negotiating this credit line, including whether they ever reached agreement that Defendant would provide funds to DHIP, (Pls. 56.1 ¶¶ 28–31), as well as whether Abate wrongfully withheld documents as part of DHIP's loan application and made false representations to Defendant in connection with DHIP's application, (Pls. 56.1 ¶¶ 36–41).  However, there is no dispute that DHIP never obtained financing from Defendant.  (*Id.* ¶ 42.)  It is also undisputed that DHIP's application for a loan from Defendant was ultimately rejected.  (*Id.* ¶ 53.)

Faced with DHIP's dire, unfunded financial situation, Abate and DHIP's other members decided to shield themselves from personal liability by selling DHIP and all its assets to Centre.  (*Id.* ¶¶ 53–57.)  As stated in an executed sale agreement dated August 21, 2013, "DHIP and its Members hereby agree to voluntarily Jointly Transfer their Membership Interests to Centre," which included "100% of Member units" in DHIP "and associated rights, votes, privileges[,] and economic interests."  (*Id.* ¶¶ 59–60 (quoting Grey Decl. Ex. 70).)[6]  The sale of membership

---

[5] I also note that "Abate was also" at some time "president of Sanlam USA."  *Fifth Third I*, 2018 WL 1569260, at *1.

[6] "Grey Decl." and "Grey Decl. Ex." refer, respectively, to the Declaration of C. Neil Grey filed by Defendant in support of its motion for summary judgment (Doc. 40), and the various exhibits thereto.

interests to Centre was accompanied by an "Asset Purchase Agreement," which states that DHIP

"hereby sells, transfers, conveys and assigns to [Centre] . . . all assets of [DHIP], including

without limitation," certain enumerated assets.  (Grey Decl. Ex. 76 at 2–3 (cited in Def. 56.1 ¶¶

61–62).)  DHIP was sold for "the sum of One Cent ($0.01) and other valuable consideration,"

(*id.* at 2), which appears to have included Centre's agreement to "assume[]" all the various loans

and "liabilities" that DHIP had "incurred in the ordinary course of [its] business," (*id.* at 3).  The

Asset Purchase Agreement also states that it and its "exhibits . . . constitute[] the sole and entire

agreement" with respect to DHIP's sale to Centre.  (*Id.* at 4.)

In September 2014, "Centre, through Abate, dissolved [DHIP] . . . by filing a Certificate

of Dissolution with the Pennsylvania Department of State."  (Def. 56.1 ¶ 67 (citing Grey Decl.

Ex. 79 ("Certificate of Dissolution")).)  The Certificate of Dissolution states that "[a]ll debts,

obligations and liabilities" of DHIP "have been paid or discharged" and that "[a]ll remaining

property and assets of [DHIP], if any, have been distributed."  (Grey Decl. Ex. 79.)  The

Certificate of Dissolution bears a file stamp from the Pennsylvania Department of State

indicating that it was deemed filed on September 18, 2014.  (*Id.*; *see also* Def. 56.1 ¶ 69.)  Abate

caused DHIP to dissolve in large part to assuage Sanlam's concern about potential litigation in

America—Sanlam bore this risk as a majority owner of Centre.  (Def. 56.1 ¶¶ 70–75.)  On

October 6, 2014, Abate emailed Sanlam's CEO stating that he had "formally dissolve[d] DHIP

(as opposed to letting it sit dormant and waiting for [Pennsylvania] to terminate its LLC charter).

This helps protect Centre as the former 100% owner of units [of DHIP] from anything that could

come out of the woodwork later on in terms of creditors, etc."  (Grey Decl. Ex. 80 (quoted in

Def. 56.1 ¶¶ 77–80).)  Abate added that this "formal[] dissol[ution]" of DHIP involved "a lot of

paperwork."  (*Id.*)

A few weeks after my opinion in *Fifth Third I*, Abate purported to buy "the remains of [DHIP]" from Centre for the nominal "consideration of $0.01." (Def. 56.1 ¶¶ 84–86; Grey Decl. Ex. 81.) The document purporting to effect Abate's purchase, which is dated April 17, 2018, is chronologically the first document in the record that references legal claims DHIP had against Defendant. Specifically, the document states that the transfer of DHIP to Abate "includes all net assets of DHIP, including but not limited to DHIP's claims against Fifth Third Bank arising out of Fifth Third's failure to provide a revolving line of credit or loan to DHIP in 2013." (Grey Decl. Ex. 81.)

On April 20, 2018, Abate wrote to two of his associates that he had "file[d] the Revival forms and name change document (due to the loss of rights to use [sic] Drexel Hamilton name) with Pennsylvania." (Grey Decl. Ex. 82.) During his deposition, "Abate admitted . . . that he sought to revive [DHIP] because" of my ruling in *Fifth Third I* that found he and his co-plaintiffs could not prosecute the claims DHIP now advances in this action. (Def. 56.1 ¶ 86 (citation omitted)).

Abate's efforts to resurrect DHIP came with some administrative hiccups and irregularities. He filed a "Statement of Revival," in which he wrote that he sought to revive a "Business Corporation," not a limited liability company, on April 19, 2018. (Grey Decl. Ex. 84 at 6–7.)[7] A week later, Abate received notice that the Statement of Revival had been rejected because "[t]he business name" had been "cancelled." (Def. 56.1 ¶ 94 (citation omitted).) After having a conversation with an employee of the Pennsylvania Department of State regarding his

---

[7] Indeed, the form Abate filed appears inapplicable to reviving a Pennsylvania LLC. It has only two checkboxes, one for indicating that the filer seeks to revive a business corporation pursuant to 15 Pa. C.S. § 1341, and the other for indicating that the filer seeks to revive a nonprofit corporation pursuant to 15 Pa. C.S. § 5341. (*See* Grey Decl. Ex. 84 at 6.) These statutes expressly allow for certain types of juridical entities to be revived, but Pennsylvania has no law allowing for the revival of an LLC.

attempts to revive DHIP, on May 4, 2018, Abate filed a "Statement of Correction" in which he stated that the Certificate of Dissolution he had filed almost four years prior "was filed erroneously as the LLC is continuing to wind up its affairs." (*Id.* ¶¶ 95–99 (citing, among others, Grey Decl. Ex. 86.) Also in May 2018, Abate filed paperwork to change DHIP's name from Drexel Hamilton Investment Partners, LLC—it had lost rights to the Drexel Hamilton name—to "DHIP, LLC." (*Id.* ¶ 101.)

In May 2018, Abate exchanged a series of emails about recent actions related to DHIP with a Sanlam employee. (*See id.* ¶ 102 & Grey Decl. Ex. 88.) In particular, on May 28, 2018, in response to a question about what exactly Centre had transferred to Abate under the agreement purporting to sell DHIP's remains to Abate for $0.01, Abate wrote he had received not just a portion of DHIP but "[t]he whole thing[.]" (Grey Decl. Ex. 88.) Specifically, Abate wrote

> The whole thing but there's nothing left in the DHIP business, [sic] all assets were transferred up to Centre back in 2013 when we acquired it. It all has to do with a technical matter of 'standing' in the ongoing lawsuit between the ex-partners of DHIP, of which I'm one, against Fifth Third Bank.

(*Id.*)

## II.   **Procedural History**

Plaintiff began this action by filing a complaint on March 6, 2019. (Doc. 1.) Plaintiff's complaint alleges that Defendant "engaged in a course of deception and delay" in the course of negotiating a "fully collateralized business line of credit, resulting in the total and permanent impairment of Plaintiff." (*Id.* ¶ 1.) Defendant filed its answer on June 28, 2019. (Doc. 15.) All discovery was to be completed by December 24, 2019. (Doc. 18.)

On March 18, 2020, both Plaintiff and Defendant moved for summary judgment. (Docs. 31, 37.) Plaintiff moved for summary judgment and filed in support of its motion multiple declarations with exhibits, a supporting memorandum of law, and a Rule 56.1 statement. (Docs.

31–36.)  Similarly, Defendant filed its motion along with a Rule 56.1 statement, a declaration

with exhibits, and a supporting memorandum of law.  (Docs. 37–40).  On April 27, 2020,

Plaintiff requested that I expand the page limit for its memorandum of law in opposition to

Plaintiff's motion, (Doc. 41), and I granted this request the next day, (Doc. 42).  Plaintiff filed its

brief opposing Defendant's motion on April 30, 2020, (Doc. 43), along with a declaration from

Abate, (Doc. 44), and a response to Defendant's Rule 56.1 statement, (Doc. 45).  That same day,

Defendant filed its opposition brief to Plaintiff's summary judgment motion and its response to

Plaintiff's Rule 56.1 statement.  (Docs.  46–47.)  On May 19, 2020, the parties jointly requested

that I expand the page limits for their reply briefs.  (Doc. 48.)  I granted this request the next day.

(Doc. 49.)  The parties each filed reply brief in support of their respective summary judgment

motions on May 21, 2020.  (Docs. 50–51.)[8]

### III.   <u>Legal Standard</u>

Summary judgment is appropriate when "the parties' submissions show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P.

56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be

counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of

---

[8] On July 6, 2020, Defendant filed a motion to strike, along with a supporting brief, portions of the Rule 56.1 statement Plaintiff had filed in support of its summary judgment motion.  (Docs. 53–54.)  Plaintiff filed a brief and a declaration in opposition on July 20, 2020.  (Docs. 55–56.)  Defendant filed a reply brief on July 27, 2020.  (Doc. 57.)  I do not resolve this motion to strike because its resolution has no bearing on my disposition here.

establishing that no genuine factual dispute exists; if satisfied, the burden shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial,"

*id.* at 256, and to present such evidence that would allow a reasonable    jury to find in his favor,

*see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment

motion, the nonmoving party "must do more than simply show that there is some metaphysical

doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials . . . ."  Fed. R. Civ. P. 56(c)(1).  If "a party fails . . . to properly address another party's

assertion of fact as required by Rule 56(c), the court may," among other things, "consider the

fact undisputed for purposes of the motion" or "grant summary judgment if the motion and

supporting materials—including the facts considered undisputed—show that the movant is

entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

   Finally, in considering a summary judgment motion, a court must "view the evidence in

the light most favorable to the non-moving party and draw all reasonable inferences in its favor,

and may grant summary judgment only when no reasonable trier of fact could find in favor of the

nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks

omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that

could reasonably support a jury's verdict for the non-moving party," summary judgment must be

denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## IV.   <u>Discussion</u>

Fifth Third's first argument on its summary judgment motion challenges Plaintiff's ability to bring this suit at all, on the grounds that DHIP's dissolution left it without legal "capacity" to sue.  (Def. Br. 24–30.)[9]  However, Fifth Third's argument also raises the threshold issue of whether DHIP legally exists at all; if it does not, then I would lack subject matter jurisdiction over this action.  *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382 (2d Cir. 2021).  By contrast, unlike existence, "capacity [to sue] . . . is non-jurisdictional in nature."  *Id.*  Thus, I must first address DHIP's legal existence.  *See* Fed. R. Civ. P. 12(h)(3); *Boorman v. United Parcel Serv. of Am., Inc.*, 159 F.3d 1345 (2d Cir. 1998) (affirming district court's *sua sponte* dismissal for lack of subject matter jurisdiction on a summary judgment motion); *Levy v. Floyd*, 468 F. App'x 87, 89 (2d Cir. 2012) ("Though neither party contests our appellate jurisdiction, we are obliged to consider the issue *sua sponte*.").  Because I find that DHIP does not legally exist, I do not reach the argument as to DHIP's capacity to sue.

### A.     *Applicable Law*

"Corporate dissolution implicates two potentially distinct legal concepts:  capacity to sue and legal existence."  *See Fund Liquidation*, 991 F.3d at 382.  These two concepts, however, are related and sometimes overlapping.  "[A]bsent a plaintiff with legal existence, there can be no Article III case or controversy" to vest a federal court with jurisdiction.  *See id.* at 384 (quoting *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 787 (4th Cir. 2019); 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 3530 (3d ed.).  Whether a juridical entity like a limited liability company has "legal existence" is determined by

---

[9] "Def. Br." refers to the brief Defendant filed in support of its motion for summary judgment.  (Doc. 38.)

reference to the law under which it was created.[10] *See Fund Liquidation*, 991 F.3d at 383 (explaining various cases which allowed dissolved companies to sue as turning on particular bodies of "state law that granted the dissolved entities continued existence" at the relevant times of suit); *id.* at 384 (looking to whether "Cayman Islands companies and partnerships" retained legal existence following dissolution).

### B. *Application*

Defendant argues that DHIP was "dissolved . . . in September 2014" and that "dissolution of a limited liability company" cannot be "reverse[d]" under "Pennsylvania law." (Def. Br. 27 (citations omitted)). Its arguments are made with reference to (1) what Pennsylvania's statutory scheme for LLCs permits—implicating whether a Pennsylvania LLC can be revived after dissolution as a matter of law—and (2) record evidence concerning whether Abate was successful in his quest to reanimate DHIP—thereby implicating matters of fact. (Def. Br. 34–30.) I will thus assess both.

Limited liability companies, like corporations, are generally "creature[s] of state law;" their existence and capabilities must be determined with regard to the law that creates them. *See, e.g.*, *Vicuna v. O.P. Schuman & Sons, Inc.*, No. 13-CV-2834 (ERK) (VVP), 2015 WL 13636666, at *3 (E.D.N.Y. May 19, 2015) (quoting *Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756

---

[10] Similarly, "[t]he capacity to sue or be sued refers to the qualification of a party to litigate in court and is determined under Federal Rule of Civil Procedure 17 and under relevant state or federal law." Wright & Miller § 1292 (4th ed.). Under Rule 17(b)(2) of the Federal Rules of Civil Procedure, "a corporation's capacity to sue and be sued" is assessed under "the law" that "organized" the corporation, *CBF Industria de Gusa S/A v. Steel Base Trade AG*, No. 14 Civ. 3034(RWS), 2015 WL 1191269, at *3 (S.D.N.Y. Mar. 16, 2015) (citing Fed. R. Civ. P. 17(b)(2)), *rev'd on other grounds sub nom.*, *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58 (2d Cir. 2017). For "a limited liability company's capacity to sue or be sued," "Rule 17(b)(3)" provides that a court is to assess this under "the law of the forum state—here, New York." *MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, No. 15-CV-3997 JMF, 2015 WL 6685523, at *6 (S.D.N.Y. Oct. 29, 2015). "There is some question as to whether Rule 17(b) incorporates choice of law rules," *id.* (citing *Museum Boutique Intercontinental, Ltd. v. Picasso*, 886 F. Supp. 1155, 1161 (S.D.N.Y.1995)); however, since I do not have jurisdiction, I need not wade into this issue or more generally into DHIP's capacity to sue in this case.

F. Supp. 126, 131 (S.D.N.Y. 1991)), *on reconsideration*, 298 F. Supp. 3d 419 (E.D.N.Y. 2017);

*Fund Liquidation*, 991 F.3d at 383 (collecting cases in which state law granted "dissolved

entities continued existence even after dissolution").  Accordingly, first, I must determine

whether Pennsylvania law regards an LLC in DHIP's situation as having ended its legal

existence; and if so, then second, I must determine whether Pennsylvania law allows for an LLC

to be granted renewed legal existence once it is terminated.  *See, e.g.*, Wright & Miller § 4507

(3d ed.) (explaining that a "federal court must" determine the contours of governing state law by

looking to the modes of analysis generally used by a "state's highest court"); *Giuffre Hyundai,*

*Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014) ("it is our job to predict how the

forum state's highest court would decide the issues before us" (quoting *DiBella v. Hopkins*, 403

F.3d 102, 111 (2d Cir. 2005), *cert. denied.*, 546 U.S. 939 (2005))).  Under Pennsylvania's

governing principles of statutory interpretation, a court is "to identify the intent of the

legislature," which "begin[s] with the presumption that unambiguous statutory language

embodies that intent, requiring no further investigation."  *Sivick v. State Ethics Comm'n*, 238

A.3d 1250, 1263 (Pa. 2020).  Further, a court interpreting Pennsylvania law "may not add

statutory language where [it] find[s] the extant language somehow lacking[.]"  *Id.* at 1264.

Pennsylvania's statutory scheme governing the winding up of an LLC like DHIP states

that "[a] dissolved limited liability company . . . continues after dissolution only for the purpose

of winding up."  15 Pa. C.S. § 8872(a).  The statute goes on to say that the winding up process

has resolved "[w]hen all debts, obligations[,] and other liabilities of the limited liability company

have been paid and discharged or adequate provisions has been made therefor and all of the

remaining property and assets of the company have been distributed."  *See id.* § 8872(f).  At this

point, Pennsylvania law considers the LLC "terminated," and those with interests in the LLC are

supposed to file a "certificate" enumerating that the winding up requirements have been met. *Id.*; (*cf.* Grey Decl. Ex. 79 (Certificate of Dissolution).)  Indeed, Pennsylvania case law appears to regard business entities like LLCs to have been "terminated" once "the winding up" process "is completed."  *See Hoffman v. Prutzman*, No. 2007-C-2614, 2010 WL 2841234 (Pa. Com. Pl. Apr. 15, 2010); *see also In re Hart*, 530 B.R. 293, 302 (Bankr. E.D. Pa. 2015) ("Once the certificate of dissolution of the LLC is filed, the LLC ceases to exist.").

Here, the evidence demonstrates that DHIP was in fact terminated.  In particular, the Certificate of Dissolution sets forth that DHIP met all of Pennsylvania's statutory requirements for LLC termination.  (*See* Grey Decl. Ex. 79.).  As such, I find that there is no dispute that Pennsylvania law would deem DHIP to have ceased to exist back in late 2014.  "[T]he record before [me] indicates," then, that at least from the time the Certificate of Dissolution was accepted by the Pennsylvania Department of State, DHIP lost its "legal existence."  *Fund Liquidation*, 991 F.3d at 383.

Plaintiff offers no argument suggesting that, as a matter of Pennsylvania law, the filing of the Certificate of Dissolution did not end DHIP's legal existence.  Instead, Plaintiff argues that DHIP is either "still in the process of 'winding up,'" or that Abate successfully brought DHIP back to life by filing paperwork to "reactivate[]" DHIP "as if it were never dissolved."  (Opp. Br. 12.)  DHIP provides no legal or factual support for these arguments.  (*See id.*)[11]  Therefore, I hold that DHIP's legal existence ended in September 2014 shortly after Abate caused the Certificate of Dissolution to be filed—it became "without legal existence" and thus "lack[s]

---

[11] Plaintiff cites New York State case law concerning how the winding up of a "dissolved corporation's affairs" should be considered to last for a court-implied "reasonable amount of time."  (Opp. Br. 12.)  Setting aside that Plaintiff does not analyze the body of law that actually created DHIP, Plaintiff does not offer any explanation why Pennsylvania law would consider DHIP to still have been in the process of winding up nearly four years from when Abate caused the Certificate of Dissolution to be filed.

standing to sue" in an Article III court.  *See Fund Liquidation*, 991 F.3d at 384.

Therefore, to proceed in this action, DHIP must demonstrate that it was legally revived. This is also a question of Pennsylvania law and is thus governed by the principles articulated above.  Defendant argues that it is impossible to resurrect DHIP as matter of law, because "Pennsylvania law does not allow the revival of dissolved LLCs," and that, even if it did, as a matter of undisputed fact, the Statement of Correction Abate filed "was based on false information" and was thereby "fraudulent" and ineffective.  (Def. Br. 9).  Defendant appears to be correct that Pennsylvania law does not provide a mechanism for reviving a dissolved LLC; nothing in the relevant chapter of Pennsylvania statutes speaks to bringing an LLC back to legal life.  *See* 15 Pa. C.S. §§ 8811–8898.  By contrast, Pennsylvania law expressly allows for business corporations and nonprofit corporations to be revived.  15 Pa. C.S. §§ 1341, 5341.  Given this, I hold that Pennsylvania law does not allow for DHIP to be revived after being terminated, because no statute allows for this to happen.  Indeed, to rule otherwise would be to "read" into Pennsylvania law a mechanism for revival that the Commonwealth's legislature "did not expressly provide" and thus that it "did not intend to make" part of the law.  *Sivick*, 238 A.3d at 1264; *In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591, 611 (Pa. 2020) ("It is a well established principle of statutory interpretation that that we 'may not supply omissions in the statute when it appears that the matter may have been intentionally omitted.'" (quoting *Sivick*, 238 A.3d at 1264)), *cert. denied sub nom. Donald J. Trump for President, Inc. v. Degraffenreid*, 141 S. Ct. 1451 (2021).

DHIP counters that it really does exist because, in 2018, Abate successfully resuscitated DHIP through the filing of the Statement of Correction.  (DHIP SJ Opp. 12–14.)  Unfortunately, Abate's machinations failed him—Plaintiff invokes no authority suggesting that a Statement of

Correction can be used to revive a limited liability company. The reason for that is plain: no authority exists to allow for this. As noted, Pennsylvania has statutes that specifically allow for the revival of certain corporate entities; however, there are no statutes that provide for the revival of limited liability companies like DHIP. If a Statement of Correction could breathe life back into any business entity, as Plaintiff argues, it would make the specific statutes allowing for revival of particular business entities superfluous. *See In re Borough of Downingtown*, 161 A.3d 844, 871 (Pa. 2017) ("[C]onsistent with our overarching goal of construing statutes to fulfill the intent of the General Assembly, we are obliged to construe [statues] in harmony, if possible, so as to give effect to both."); *Commonwealth ex rel. Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (2018) ("When interpreting a statute, courts must presume that the legislature did not intend any statutory language to exist as mere surplusage."). Moreover, "a statement of correction is used to correct inaccurate records of corporate action or defectively or erroneously executed documents, not to undo a corporate action that has already been effected." *First Union Nat'l. Bank v. Quality Carriers Inc.*, 48 Pa. D. & C.4th 1, 11 n.18 (Com. Pl. 2000) (internal citation omitted) (citing 15 Pa. C.S. § 138). Here, Plaintiff only claims "it was an error to dissolve the LLC without prosecuting the causes of action" it pleads in this case, (Opp. Br. 13), but it does not explain why Pennsylvania law would regard this as error that could be undone through the Statement of Correction. Furthermore, it appears to be undisputed that Abate and the other members' termination of DHIP was a volitional act taken to avoid, among other things, personal liability at the hands of DHIP's creditors. (Def. 56.1 ¶¶ 70–75; Grey Decl. Ex. 80 (email from Abate stating that the "formal[] dissol[ution] [of] DHIP" would "protect Centre . . . from anything that could come out of the woodwork later on")) DHIP's termination was thus the sort of corporate action that cannot be undone. *See First Union Nat'l Bank*, 48 Pa.

D. & C.4th at 11.  Plaintiff does not identify any facts in the record that suggest the filing of

Certificate of Dissolution was anything but a volitional act.  Although Plaintiff argues that DHIP

"has been returned to 'active' status" following Abate's interactions with employees of the

Pennsylvania Department of State, (Opp. Br. 15), Plaintiff offers no argument as to why DHIP's

administrative designation in the records of the Pennsylvania Department of State would matter

here, where the ultimate question is whether the "state law" creating DHIP allows it to have

"continued existence."  *See Fund Liquidation*, 991 F.3d at 383.[12]

---

[12] Furthermore, the only "evidence" Plaintiff cites in support of its claim as to DHIP's active status is a partially-redacted email exchange between Abate and a Pennsylvania Department of State employee that took place in May of 2018, in which the employee wrote "[t]he LLC has been returned to 'active' status." (Doc. 44-3 at 2.)  Even if this email discussed how DHIP can exist in spite of Pennsylvania statutory law to the contrary—and it does not—it would not be enough to defeat summary judgment here since it is inadmissible hearsay.  *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").  Specifically, Plaintiff appears to offer this email "to prove the truth" of the statement that DHIP is active, thus placing it within the definition of hearsay.  *See* Fed. R. Evid. 801(c).  Plaintiff identifies no hearsay exception to allow this email exchange to be deemed admissible, and I do not find any hearsay exception applies.

V.      **Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment, (Doc. 37), is

GRANTED.  The other pending motions in this action are DENIED as moot.  The Clerk of Court

is respectfully directed to enter judgment for Defendant Fifth Third, close the open motions on

the docket, and close this case.

SO ORDERED.

Dated: September 28, 2021
        New York, New York

_____
        Vernon S. Broderick
        United States District Judge